UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANTHONY E. PARSONS,

      Plaintiff,

-vs-                                                                 Case No. 6:11-cv-5-Orl-GJK

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.
_____

## MEMORANDUM OF DECISION

Anthony E. Parsons (hereafter "Claimant") filed an application for Social Security disability insurance benefits (hereafter "Application"), alleging disability as of June 2, 2006. R. 67-69. After his Application was denied, Claimant requested reconsideration and a hearing was held before Administrative Law Judge (hereafter "ALJ") Ruben Rivera, Jr. R. 20-34, 53-54, 61. On February 20, 2009, the ALJ entered a decision finding Claimant not disabled and denying his Application. R. 14-19. The Appeals Council denied Claimant's request for review. R. 1. Claimant timely appealed. Doc. No. 1. For the reasons discussed more fully below, the Commissioner's decision is **AFFIRMED**.

I.      MEDICAL HISTORY

      **A. Dr. Paine**

Claimant began treating with Dr. Jonathan T. Paine in December 2005. R. 159-60. On the initial visit, Dr. Paine reviewed Claimant's MRI and indicated that Claimant suffered from "[d]egenerative disc disease at L1-2, L4-5 and L5-S1." R. 159. Dr. Paine recommended a lumbar discography and advised that a lumbar fusion could be a possibility if Claimant had a

1

positive discography at the appropriate level. R. 160. On January 18, 2006, Dr. Paine reviewed a "CT scan post discogram" which revealed "degenerative disc degeneration at L1-2 and L4-5." R. 157. Dr. Paine also reviewed a report that indicated Claimant had concordant pain in both L1-2 and L4-5. R. 157. Dr. Paine recommended a "two-level anterior lumbar interbody fusion with pedicle fixation. This would be tapered cages and BMP protein." R. 157.

On June 13, 2006, Dr. Paine performed an "anterior lumbar interbody fusion" at L4-5 and L5-S1. R. 151-53. On June 26, 2006, Dr. Paine noted that Claimant "is doing very well. X-rays reveal appropriate position of the construct. The patient feels substantial improvement." R. 156. On August 2, 2006, Dr. Paine noted that Claimant was generally doing well, but still had back pain which Dr. Paine opined would improve. R. 155. Dr. Paine noted that Claimant had not begun physical therapy. R. 155. On September 13, 2006, Dr. Paine indicated that Claimant was "doing well" and "had no specific complaints." R. 154.

On July 25, 2007, Dr. Paine saw Claimant for a re-evaluation. R. 359. He noted that Claimant's back pain had improved and that Claimant's symptoms included a complaint of neck pain. R. 359. Dr. Paine reviewed Claimant's x-rays and indicated that "[t]reatment options consist of continued conservative therapy." R. 359. Dr. Paine also indicated that he did not feel a re-evaluation was required and he would see Claimant as needed. R. 359. Dr. Paine also wrote a letter confirming that Claimant was receiving treatment for back pain and would require periodic re-evaluation, as well as possible future surgery. R. 358. On November 17, 2008, Dr. Paine saw Claimant again for a complaint of neck and back pain. R. 357. Dr. Paine referred Claimant to the Veteran's Administration (hereafter "VA") for pain management and indicated that further surgery was not needed. R. 357. Dr. Paine indicated that he would be available for future evaluation and would consider a new discogram to "assess the pain generator." R. 357.

### B. Dr. Jaffe

On December 3, 2008, Claimant presented to Dr. Todd B. Jaffe for pain in his back, hips, and knees. R. 421. Claimant indicated his pain was an eight on a scale of ten. R. 421. Dr. Jaffe indicated that Claimant had received lumbar epidural steroid injections, Percutaneous Disk Decompression, acupuncture and tens unit without relief. R. 421. Dr. Jaffe recommended additional back surgery. R. 424. On December 30, 2008, Claimant presented for parasympathetic and sympathetic nervous system testing. R. 424. Dr. Jaffe indicated that he anticipated Claimant would use high risk medication on a long term basis, had idiopathic peripheral autonomic neuropathy, lumbar pain and "post laminectomy syndrome lumbar L. Radiculopathy." R. 424. On January 7, 2009, Dr. Jaffe reiterated his December 30, 2008, findings. R. 434. Dr. Jaffe recommended home exercises and stretching, and counseled Claimant on the judicious use of narcotics in light of the potential for addiction. R. 434.

On April 30, 2009, Dr. Jaffe indicated that Claimant had decreased range of motion in the lumbar spine with pain. R. 446-47. Dr. Jaffe indicated that straight leg testing revealed pain radiating from the buttocks to post thigh. R. 447. Dr. Jaffe indicated that he anticipated Claimant would use high risk medication on a long term basis, had idiopathic peripheral autonomic neuropathy, lumbar pain and "post laminectomy syndrome lumbar L. Radiculopathy." R. 447. On May 27, 2009 Dr. Jaffe performed surgery to install "epidural electrolytes for trial spinal cord stimulation and programming of temporary generator." R. 552. On June 1, 2009, Claimant presented to Dr. Jaffe "for post-op evaluation of pain." R. 444. Dr. Jaffe notes that Claimant stated the spinal cord stimulator helped his legs, but not his back, and that he was "not happy with it and doesn't want it." R. 444. Dr. Jaffe once again indicated that he anticipated Claimant would use high risk medication on a long term basis, had idiopathic peripheral

autonomic neuropathy, lumbar pain and "post laminectomy syndrome lumbar L. Radiculopathy." R. 444.

### C. VA Records

Claimant has received treatment at the VA since 2005. The VA records reflect that Claimant visited the VA for imaging studies, blood work, eye appointments, ambulatory care, outpatient nursing assessments, outpatient treatment and counseling, prescription refills, pain management, physical therapy, and compensation and pension examinations. R. 192-196, 198-201, 207-209, 220-21, 224-33, 280-90, 293-301, 303-10, 362, 371, 384-400, 402-11. Claimant also treated with psychiatrists at the VA.

On June 9, 2005, Dr. Raymond M. De Castro, a psychiatrist, noted that Claimant had increased the dosage of amitriptyline as directed but was not sleeping better. R. 224. Dr. De Castro observed that Claimant was talkative and preferred to stand and pace due to his back pain. R. 224. Dr. De Castro further indicated that Claimant was coherent, alert, oriented and there was no sign of psychosis. R. 224. Dr. De Castro opined Claimant suffered from depression secondary to chronic back pain. R. 224.

On September 7, 2005, Dr. De Castro noted that the increased dosage of amitriptyline was still not helping Claimant sleep and that Claimant stated "his main problems are pain and insomnia, and not any other behavioral disturbances." R. 216. Dr. De Castro observed Claimant to be alert and speaking coherently. R. 216. Dr. De Castro again opined that Claimant suffered from depression secondary to chronic back pain. R. 216. On October 5, 2005, Dr. De Castro noted that Claimant stated the medication prescribed instead of amitriptyline did not do anything and continued to complain of pain and poor sleep. R. 215. Dr. De Castro observed that Claimant stands and talks rapidly. Dr. De Castro once again opined that Claimant suffered from

depression secondary to chronic back pain.  R. 215.  On November 30, 2005, Dr. De Castro noted that Claimant indicated his medications were having no effect and that he spoke with "superficial gaiety as he paces around."  R. 210.  Dr. De Castro again noted that Claimant suffered from depression secondary to chronic back pain.  R. 211.

On September 13, 2006, Dr. Timothy L. Reid, a psychiatrist, examined Claimant, noting a history of depression, "some demoralization with chronic pain and insomnia, but no prevalent mood dysphoria."  R. 196.  Dr. Reid noted that Claimant had stopped taking all antidepressants with no change in mood.  R. 196.  Dr. Reid indicated that Claimant was "non-depressed, tense at times due to pain and insomnia."  R. 196.  Otherwise, Dr. Reid's mental examination was normal.  R. 196.  Dr. Reid opined that Claimant has a "[h]istory of adjustment disorder with depressed features due to chronic pain and immobility."  R. 197.

On March 20, 2007, Dr. Joseph Robertson performed a compensation and pension examination.  R. 280-84.  Dr. Robertson noted that Claimant complained of pain in his left ankle after falling off a ladder.  R. 280.  Dr. Robertson indicated that Claimant could only stand for fifteen to thirty minutes and was "[u]nable to work more than a few yards."  R. 281.  Dr. Robertson noted that Claimant "limps upon walking," has poor propulsion and an antalgic gait.  R. 282.  Dr. Robertson diagnosed Claimant with a left ankle sprain.  R. 284.  Dr. Robertson indicated that Claimant's sprained ankle would moderately affect his ability to perform chores and shopping, mildly affect his ability for travel and recreation, and prevent him from exercising and sports.  R. 284.

On June 26, 2009, Claimant appeared at the VA for a follow-up concerning his back pain.  R. 540.  A licensed practical nurse indicated that Claimant stated his pain was a nine on a scale of ten and was requesting his medication be changed because Claimant felt he had built up a

tolerance to his currently prescribed methadone and oxycodone. R. 540. The licensed practical nurse noted the pain affected Claimant's ability to perform daily activities, physical activities and walking. R. 541.

On July 22, 2009, Claimant appeared at the VA, requesting something to help him sleep due to his chronic pain. R. 520. A registered nurse indicated that Claimant reported his pain was an eight on a scale of ten. R. 521. The registered nurse indicated that the pain affected Claimant's appetite, sleep, daily activities, physical activities, walking, mood, emotions, social life and employment. R. 521.

On December 4, 2009, Claimant appeared at the VA, reporting to a nurse that his spinal cord stimulation surgery failed and he did not want any additional surgery. R. 489. Claimant reported his pain was a nine on a scale of ten and that he almost threw up due to the pain. R. 489. Claimant requested the dosage of his oxycodone prescription be increased. R. 489.

On February 22, 2010, Claimant met with a nurse at the VA and asked to "see Mh for symptoms of depression and insomnia." R. 478. Claimant indicated he was previously prescribed Temazepam but it was ineffective. R. 478. A depression screen was conducted, and it was "suggestive of moderately severe depression." R. 478. Claimant was scheduled an appointment to see a doctor. R. 478.

On March 1, 2010, Dr. Mahasukh Shah, a psychiatrist, examined Claimant, noting complaints of being unable to sleep, tiredness, restlessness, feeling low and depressed. R. 467. Other than noting that Claimant was a "little anxious," Dr. Shah's mental examination was essentially normal. R. 468. Dr. Shah opined that Claimant suffers from a "mood disorder due to med condition, insomnia." R. 469.

On July 14, 2010, Dr. Lantie E. Quinones, a psychiatrist, examined Claimant. R. 450-54. Dr. Quinones observed that Claimant's speech was pressured, had some loose motor movements, appeared restless, constantly changed positions, had poor attention, appeared easily distracted, had an irritable affect, was mildly labile and was in a "crappy" mood. R. 451. Dr. Quinones also noted that Claimant was not compliant with his medications. R. 451. Dr. Quinones opined that Claimant suffered from "[m]ood disorder secondary to GMC – E/F Bipolar disorder NOS." R. 451.

### D. State Consultants

On December 19, 2006, Dr. Eric Wiener reviewed Claimant's medical records and completed a psychiatric review technique. R. 243-56. Dr. Wiener opined that Claimant suffers from adjustment disorder. R. 246. Dr. Wiener opined that Claimant has mild restrictions performing activities of daily living and maintaining concentration, persistence or pace. R. 253. Dr. Wiener opined that Claimant has no difficulties maintaining social functioning and no episodes of decompensation. R. 253.

On January 9, 2007, Dr. Nitin Hate performed a disability evaluation. R. 259-61. Dr. Hate examined Claimant and noted that Claimant's gait was normal and he could toe and heel walk. R. 259. Dr. Hate noted that Claimant could only squat halfway, but there were no paravertebral muscle spasms and his spine was normal. R. 260. Dr. Hate further noted that Claimant's muscle strength, deep tendon reflexes, coordination, dexterity and range of motion, with the exception of his thoracolumbar spine which was reduced, were normal. R. 260. Dr. Hate opined that Claimant continues to experience pain and has difficulty stooping and squatting. R. 260. However, Dr. Hate opined that "[a]ny limitations will be secondary to pain." R. 261.

On January 18, 2007, Dr. Benjamin Stalnaker reviewed Claimant's medical records and completed a physical residual functional capacity assessment. R. 265-72. Dr. Stalnaker opined that Claimant can occasionally lift fifty pounds and frequently lift twenty-five pounds. R. 266. Dr. Stalnaker opined that Claimant can stand, walk and sit about six hours in a normal eight-hour workday. R. 266. Dr. Stalnaker opined that Claimant's ability to push and pull is unlimited. R. 266. Dr. Stalnaker opined that Claimant can frequently kneel, crawl and climb ramps, stairs, ladders, ropes and scaffolds. R. 267. Dr. Stalnaker opined that Claimant can occasionally stoop and crouch, and has no manipulative, visual, communicative or environmental limitations. R. 267-69. Dr. Stalnaker indicated that he did not find the severity of the symptoms and alleged effect on function entirely consistent with the medical and non-medical evidence, "including statements by the claimant and others, observation regarding activities of daily living, and alterations of usual behavior or habits." R. 270. Dr. Stalnaker also indicated that some of the allegations and symptoms are "disproportionate to the expected severity and duration that would be expected on the basis of the claimant's medically determinable impairments. The RFC is therefore reduced accordingly to reflect the work capacity, with appropriate restrictions to compensate for the impairments and associated symptoms, that can be medically determined." R. 270.

On June 14, 2007, Dr. Theodore Weber reviewed Claimant's medical records and completed a psychiatric review technique. R. 333-46. Dr. Weber opined that Claimant suffers from adjustment disorder with "depressed FX due to chronic pain and immobility." R. 336. Dr. Weber opined that Claimant has no restrictions on activities of daily living, maintaining social functioning, maintaining concentration, persistence or pace and no episodes of decompensation. R. 343.

On June 14, 2007, Dr. Sunita Patel reviewed Claimant's medical records and completed a physical residual functional capacity assessment. R. 347-54. Dr. Patel opined that Claimant can occasionally lift twenty pounds and frequently lift ten pounds. R. 348. Dr. Patel opined that Claimant can stand, walk and sit about six hours in a normal eight-hour workday. R. 348. Dr. Patel opined that Claimant's ability to push and pull is unlimited. R. 348. Dr. Patel opined that Claimant can occasionally stoop, crouch and climb ladders, ropes and scaffolds. R. 349. Dr. Patel opined that Claimant has no manipulative, visual or communicative limitations. R. 351. Dr. Patel opined that Claimant should avoid concentrated exposure to hazards, but otherwise has no environmental limitations. R. 351.

## II.    ADMINISTRATIVE PROCEEDINGS

In addition to the Application, the record contains numerous disability reports. In an undated disability report, Claimant indicated his "[d]egenerative spine disease, l1-5,s1 severe lumbar strain" are the conditions that prevent him working. R. 83. In another undated disability report, Claimant stated that he was suffering from "severe back pain" and the pain in his ankles and left knee had increased. R. 113. In response to the question of whether Claimant had any "new physical or mental limitations as a result of your illnesses, injuries or conditions," Claimant answered "No." R. 113. Claimant provided this same response in a third undated disability report. R. 132.

Prior to the hearing before the ALJ, Claimant submitted a "Theory of Disability," in lieu of an opening statement. R. 23, 436-43. Claimant indicated he had "back surgery and has been unable to work since that time." R. 436. Claimant indicated that he has been "suffering from severe, chronic pain since his back surgery and has sought medical treatment through the V.A." R. 436. Claimant summarized Dr. Jaffe's findings from his December 3, 2008, visit and

9

concluded that he is incapable of performing his past relevant work due to "severe, chronic pain with resultant limitations." R. 436.

On January 14, 2009, a hearing was held before the ALJ. R. 20-34. Claimant testified that he was born on December 27, 1960. R. 23. Claimant testified that he served in the U.S. Navy from 1982 to 1987 and was injured after being hit in the lower back with a "monkey fist." R. 23-24.[1] Claimant testified that he last worked from January 2005 to June 2006, doing plastic form banding for concrete exterior trim work on houses. R. 24-25. Claimant testified that this job involved light work, lifting, occasionally using ladders and a lot of walking. R. 25. Claimant testified that he did not work from June 2003 to 2005, due to a workers' compensation injury. R. 25. Prior to his injury, Claimant testified that he worked with storm water, as a truck driver, operating heavy equipment and other construction work. R. 25-26. Claimant testified that he lives with his mother and stepfather. R. 24.

Claimant testified that he stopped working after having back surgery, which involved putting "in some bumpers of my L4, L5, S1 and caged it in." R. 26. Claimant testified that he now does not throw up as often due to his lower back pain, but that he still has pain which feels like constant pressure and can be very sharp. R. 27. Claimant testified that walking and sitting makes the pain worse and he can generally sit for twenty to thirty minutes before needing to get up and move around. R. 27-28. Claimant testified that the pain radiates from his hips if he stands or sits for too long, and it radiates down both his legs. R. 28-29. Claimant testified that he is only able to sleep for a couple of hours per night as a result of the pain and he dozes off for fifteen to thirty minutes at a time. R. 29. Claimant testified that he does not sleep during the day

---

[1] Claimant testified that a "monkey fist" is "an oval ring, metal ring that is wrapped with cord, rope to make it a round ball. And it has a, has a line coming out with a hook on it and it's used for throwing lines from ship to ship." R. 24.

because he cannot get comfortable and his blood pressure is always high because of the pain. R. 30.

Claimant testified that he can walk maybe fifty yards before his hips starting hurting and that walking further also causes his knees to bother him. R. 30. Claimant testified that he can stand between ten to thirty minutes, but is always shifting because of the pain. R. 31. Claimant testified he can bend slightly, cannot bend over fast and only drives short distances. R. 31. Claimant testified that he has trouble concentrating. R. 32. Claimant testified that he is prescribed methadone, oxycodone and gabapentin. R. 31-32. Claimant testified that he tries to wash dishes, but after a couple of minutes his back starts to hurt and throb. R. 33. Claimant testified that some days it is "really, really difficult" to dress himself. R. 33.

In his decision, the ALJ found Claimant suffers from the severe impairment of "status post lumbar fusion." R. 16. The ALJ found Claimant has the residual functional capacity to perform the full range of medium work. R. 16. The ALJ summarized Claimant's testimony and found that his statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they conflicted with the ALJ's residual functional capacity assessment. R. 17-18. In regard to the medical opinion evidence, the ALJ stated the following:

> As for the opinion evidence, <u>the undersigned reviewed the medical evidence submitted with this claim from the Veteran's Administration. Those records were evaluated and compared with all other medical reports</u>. The undersigned gave great credibility to the opinions of Dr. Paine and Dr. Hate. Dr. Paine saw claimant over more than a two-year period and he reported that claimant was much improved and doing well. Dr. Jafee's notes were also considered, but the opinion of claimant's surgeon, Dr. Paine was given greater weight. Dr. Jaffe provided ongoing medication relief without proposing corrective measures. In accordance with the residual functional capacity assessment, [Claimant] is capable of

performing medium exertional level work.

R. 18-19 (emphasis added). Thus, the ALJ gave Dr. Paine and Dr. Hate's opinions great credibility and found Claimant could perform medium work.

## III.  THE PARTIES' POSITIONS

Claimant asserts the ALJ "failed to properly consider and weigh all of the evidence; specifically, the medical evidence from the Veteran's Administration where [Claimant] has received treatment and narcotic pain medications regularly for his chronic back pain for several years." Doc. No. 10 at 17 (emphasis added). Claimant contends the ALJ was required to "state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence," citing *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990); *Gibson v. Heckler*, 779 F.2d 619 (11th Cir. 1986); *Brooks v. Sullivan*, 882 F.2d 1375 (8th Cir. 1989); and *Fargnoli v. Massanari*, 247 F.3d 34 (3d Cir. 2001). Doc. No. 10 at 17-18. Claimant asserts the ALJ devoted only two sentences to the VA records, simply indicating he reviewed, evaluated and compared them with the other medical reports of record, but did not state what was contained in them. Doc. No. 10 at 17.

Claimant contends the VA records are relevant to show that he does not have the RFC to perform medium work and to support Claimant's statements regarding the "intensity, persistence and limiting effects of his symptoms which the ALJ found not to be credible to the extent they were inconsistent with his residual functional capacity assessment." Doc. No. 10 at 19. Claimant also argues that the ALJ's failure to properly consider the VA records resulted in the ALJ failing to consider his nonexertional impairments: depression secondary to chronic back pain. Doc. No. 10 at 20. Claimant concludes that the ALJ found he could perform medium work "without considering the effects of all of [his] impairments as required by the law of this

Circuit." Doc. No. 10 at 21. Claimant requests the Court reverse and remand for an award of benefits "since there is currently enough evidence in the record to support a finding of disability" or, alternatively, remand for a rehearing. Doc. No. 10 at 22.

The Commissioner argues that an ALJ is not required to specifically refer to every piece of evidence, "provided the ALJ's decision is sufficient to enable the court to conclude that the ALJ properly considered the claimant's condition as a whole," quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Doc. No. 13 at 3. The Commissioner asserts the ALJ's decision reflects that the ALJ properly considered the medical record as a whole in making his determination, the VA records do not establish that Claimant is more limited than the ALJ found and, further, do not provide any restrictions or limitations on Claimant's ability to perform work-related activity. Doc. No. 13 at 6-7. The Commissioner also asserts that Claimant's testimony regarding his pain conflicts with the doctors' opinions and the medical record as a whole. Doc. No. 13 at 9-10.

The Commissioner argues that Claimant abandoned any claim that he suffers from a nonexertional mental impairment by failing to include any such impairment on his Disability Report, dated October 17, 2006, or thereafter. Doc. No. 13 at 12. The Commissioner also argues that Claimant abandoned any claim that he suffers from a nonexertional mental impairment by failing to mention or testify to any such limitation at the hearing or in his "Theory of Disability." Doc. No. 13 at 12. The Commissioner also points out that Claimant did not mention any nonexertional mental impairments in his request for review to the Appeals Council. Doc. No. 13 at 13. The Commissioner also argues that the medical record does not support finding Claimant had any nonexertional mental impairments. Doc. No. 13 at 13.

13

The Commissioner argues that the majority of the records Claimant relies on to support his argument were submitted to the Appeals Council after the ALJ issued his decision and, therefore, the ALJ could not have considered them. Doc. No. 13 at 16. The Commissioner asserts that the Court "does not consider evidence submitted to the Appeals Council in determining whether the ALJ's decision is supported by substantial evidence," citing *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1266 (11th Cir. 2007). The Commissioner also asserts that the records do not support a finding that Claimant suffers from any mental impairments. Doc. No. 13 at 17-19.

## IV. LEGAL STANDARDS

### A. THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B.    STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## V.     ANALYSIS

When determining a claimant's impairments, the ALJ is required to consider evidence from "acceptable medical sources:" licensed physicians, psychologists, optometrists, podiatrists and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). When a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "[A] treating physician's opinion about the nature and severity of a claimant's impairment is generally given controlling weight if it is well supported and is not inconsistent with other substantial evidence." *Siverio v. Comm'r of Soc. Sec.*, 2012 WL 573588 at *3 (11th Cir. 2012).

A claimant may not assert that the ALJ failed to consider an impairment when the claimant does not allege that he suffers from the impairment in his application or at the hearing. *Robinson v. Astrue*, 365 F. App'x. 993, 995 (11th Cir. 2010); *Street v. Barnhart*, 133 F. App'x. 621, 627-28 (11th Cir. 2005). Thus, to challenge an ALJ's finding regarding a claimant's impairments, the claimant must allege that he suffers from the impairment in his application and an acceptable medical source must opine that the claimant suffers from the impairment.

In the case at bar, Claimant raises a general argument that the ALJ failed to "properly consider and weigh" the "medical evidence" from the VA as evidenced by the fact that the ALJ devoted two sentences to the VA records without stating what was contained in them. Doc. No. 10 at 17. In summarizing and highlighting the relevant VA records, Claimant points to records

16

from medical sources -- primarily non-acceptable medical sources -- concerning his depression, ankle injury and back pain. *See* Doc. No. 10 at 5-7. Claimant contends the VA records indicate that he does not have the RFC to perform the full range of medium work, lend credibility to Claimant's testimony and establish he suffers from nonexertional impairments. Doc. No. 10 at 19-20.

Neither in his Application nor at the hearing did Claimant assert that he suffered from any limitations caused by an ankle injury or depression. *See* R. 21-34, 67-69. Claimant's "Theory of Disability," indicates that the basis for his disability claim is chronic, severe back pain and resulting limitations. R. 436. Claimant cannot now complain the ALJ did not find that he suffered from any limitations related to an ankle injury or depression when Claimant failed to allege in his Application and did not testify at the hearing that these were impairments. *See Robinson*, 365 F. App'x. at 995; *Street*, 133 F. App'x. at 627-28. Thus, the ALJ did not err in not finding Claimant suffered from such impairments because they were neither alleged in the Application nor testified to at the hearing. *Id.*

To the extent Claimant relies on the non-acceptable medical sources in the VA records to establish he suffers from the nonexertional impairment of pain, the ALJ was not required to give these records any weight. Opinions from non-acceptable medical sources are "not entitled to any special consideration." *Smith v. Astrue*, No. 5:08-cv-386-Oc-GRJ, 2010 WL 1223879 at *6 (M.D. Fla. Mar. 24, 2010). In determining a claimant's impairments, the ALJ must rely on opinions from acceptable medical sources. *See* 20 C.F.R. § 404.1513(a); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (a non-acceptable medical source opinion may not establish the existence of an impairment). Thus, the ALJ did not err in failing to expressly weigh the non-acceptable medical sources in determining Claimant's impairments.

The Court notes that Claimant has not pointed to any acceptable medical source opinion in the medical records presented to the ALJ and the Appeals Council that indicates Claimant suffers from any impairment beyond that found by the ALJ. There is also no treating or examining physician opinion regarding how Claimant's claimed impairments affect his ability to perform basic work activities.[2] The Court acknowledges that Claimant has attached two opinions, one from a physician's assistant and one from a treating physician, to his brief. Doc. No. 10 at 23-24. These opinions are being presented for the first time on appeal, presumably for the purpose of seeking a remand pursuant to sentence six of 42 U.S.C. § 405(g). A claimant who submits new evidence to the district court for this purpose must establish: 1) the evidence is new and not cumulative; 2) the evidence is "material" (i.e.: relevant and probative) such that there is a reasonably probability that the administrative result would change; and 3) good cause for failing to submit the evidence at the administrative level. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *also see Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1267 (11th Cir. 2007). Claimant has not attempted to make this required showing. Therefore, the Court will not consider these newly submitted opinions.

Finally, the Court rejects Claimant's argument because there is no requirement that the ALJ specifically refer to every piece of medical evidence in the record. *See Dyer*, 395 F.3d at 1211. In his decision, the ALJ indicates he reviewed, evaluated and compared the VA records with "all other medical reports." R. 18. The ALJ gave Drs. Paine and Hate's opinions "great credibility." R. 18. Because opinions from non-acceptable medical sources are "not entitled to any special consideration," *Smith*, No. 5:08-cv-386-Oc-GRJ, 2010 WL 1223879 at *6, the ALJ did not err in failing to specifically state the contents or weight given to the VA records.

---

[2] Dr. Hate simply opined that "[a]ny limitations will be secondary to pain." R. 261. The record does not contain any opinion suggesting Claimant cannot work or addressing Claimant's limitations on a function-by-function basis.

## VI. CONCLUSION

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to enter judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Orlando, Florida on March 21, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests the Clerk Mail
or Deliver Copies of this Order to:
Kathleen A. Smith
Riley & Smith, P.A.
P.O. Box 2646
Titusville, Florida 32781-2646

John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida  33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
John C. Stoner, Branch Chief
Ashley Johnson, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia  30303-8920

The Honorable Ruben Rivera, Jr.
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Suite 1550 New River Ctr.
200 E. Las Olas Blvd.
Ft. Lauderdale, FL 33301